GARY A. HECKER (SBN 99008)
ghecker@munckwilson.com
MUNCK WILSON MANDALA, LLP
1925 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone:  (310) 286-0377

Attorney for Plaintiff
**SHARON STONE**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SHARON STONE**, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> **CHELSEA DUDLEY,** an individual; and DOES 1 – 10, <br><br> Defendants. | **Civil Action No.  2:19-cv-9492** <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTION:** <br><br> 1. VIOLATION OF THE LANHAM ACT; 15 U.S.C. § 1125(a) (UNFAIR COMPETITION) <br><br> 2. VIOLATION OF THE CALIFORNIA COMMON LAW RIGHT OF PUBLICITY <br><br> 3. VIOLATION OF THE CALIFORNIA STATUTORY RIGHT OF PUBLICITY; (CAL. CIV. CODE CODE § 3344) <br><br> ***DEMAND FOR JURY TRIAL*** |

**COMPLAINT**

Plaintiff Sharon Stone, by and through her attorney Gary Hecker of the law firm of Munck Wilson Mandala, LLP, hereby alleges as follows:

## THE PARTIES

1. Plaintiff Sharon Stone is an individual and a resident of Los Angeles, California and exclusively owns all rights in and to her name, likeness, image, identity and persona.

2. Defendant Chelsea Chanel Dudley ("Dudley") is an individual and a resident of Los Angeles, California.

3. Plaintiff is currently unaware of the true names and capacities of DOES 1 through 10, inclusive, and therefore sues them by those fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when they are ascertained.

4. Defendants, and each of them, are, and at all terms herein were, the alter-ego, principal, agent, employee, employer, joint venturer, customer, or otherwise affiliated with one another so as to be liable in such capacity for the acts alleged herein.

## JURISDICTION & VENUE

5. This is an action for violation of 15 U.S.C. § 1125(a) and violations of the California common law and statutory rights of publicity.

6. This Court has subject matter jurisdiction over the federal cause of action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7. Venue for this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because Defendant Dudley resides in this district.

//
//

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiff Sharon Stone

8. Plaintiff Sharon Stone is an internationally known film and television actress, celebrity, philanthropist, and pop culture icon.

9. Sharon Stone has attained an extraordinary level of popularity and fame in the United States and throughout the world and is the subject of substantial public interest and attention in contemporary media.

10. Sharon Stone is widely known for her starring roles in feature films such as *Basic Instinct*, *Casino*, *Total Recall*, *The Quick and the Dead, Sliver*, *The Muse*, *The Mighty*, *The Disaster Artist*, and many other feature films and television shows and episodes.

11. Sharon Stone often has been a guest on popular television talk shows such as *Good Morning America*, *Live with Kelly and Ryan*, *The View*, *The Talk*, *Jimmy Kimmel Live*, *The Late Show with Stephen Colbert*, and *The Ellen DeGeneres Show*.

12. Sharon Stone has frequently received critical acclaim and industry recognition for her work both as an actress and as a philanthropist. Among her many acting awards and honors, Sharon Stone received: (1) a Golden Globe® Award and an Academy Award® nomination for best actress in the Martin Scorsese film *Casino*; (2) Golden Globe® nominations for her performances in *Basic Instinct*, *The Mighty* and *The Muse*; (3) an MTV® Movie Award for her role in *Basic Instinct*; (4) MTV movie award nominations for her performances in *Sliver*, *The Specialist*, and *Casino*; (5) a Screen Actors Guild Award for her role in *Bobby*, and (6) a Prime Time Emmy® Award for her performance in the TV series *The Practice*.

13. Sharon Stone's performance in the interrogation scene in *Basic Instinct* ("Interrogation Scene") is one of the most iconic performances in contemporary film. The Interrogation Scene, and Sharon Stone's performance in it, are inextricably associated with Sharon Stone. They are indelibly etched in the minds of the public as

being identified with Sharon Stone, and immediately conjure up her name, likeness, image, identity, and persona.

14. Sharon Stone is also well known for her extensive work on behalf of many global charitable causes, including the fight against AIDS, Parkinson's disease and lupus. As part of that effort, Ms. Stone has lent her support to many charitable foundations, including the American Foundation for AIDS Research, Lupus LA, The National Center for Missing and Exploited Children, Planet Hope, The Muhammad Ali Parkinson's Center, the American Stroke Association, and many others.

15. Sharon Stone's philanthropic efforts have been widely recognized and honored, including her having received:

(1) the Nobel Peace Summit Award from the Nobel Peace Laureates presented by the Dalai Lama for her work on HIV/AIDS;

(2) the World Charity Award by Mikhail Gorbachev;

(3) the Muhammad Ali Humanitarian Award for her work in helping to find a cure for Parkinson's Disease;

(4) the Ribbon of Hope Award for AIDS awareness and education; and

(5) the Harvard Humanitarian Award as an advocate of AIDS research.

16. Sharon Stone has selectively endorsed, and continues to selectively endorse, various products and services, including clothing, shoes, fashion accessories, jewelry, perfume, skin care products, and fashion styling services.

17. Sharon Stone has more than 1.6 million followers on Instagram, more than 118,000 Twitter followers, and more than 643,000 Likes on Facebook. She has also been featured on the covers of over 300 popular celebrity and fashion magazines, including Vogue, Rolling Stone, Vanity Fair, Elle, Esquire, Bazaar, Shape, Empire, Allure, ESPN, GQ, Paris Match, Time Out, Hello!, Easy Living, Cosmopolitan, and People.

18. Sharon Stone has invested substantial time, energy, finances, and entrepreneurial effort in developing her considerable professional and commercial

**COMPLAINT**

achievements and success, as well as in developing her popularity, fame and prominence in the public eye.

19. Sharon Stone's name, likeness, image, identity and persona have come to be associated in the minds of the consuming public with products and services that Ms. Stone endorses, including entertainment services.

20. Sharon Stone's name, likeness, image, identity, and persona are widely known by a substantial segment of the public in the United States and internationally. They have thereby become, and are, valuable commercial assets that symbolize Sharon Stone, and that symbolize the level of quality associated with Ms. Stone's products, services and entertainment performances, together with the goodwill associated with them.

21. Sharon Stone has regularly received substantial financial offers requesting permission for, and seeking the use of, her name, likeness, image, identity and persona for promoting products, services and performances.

22. Sharon Stone maintains strict control over the manner in which her name, likeness, image, identity, and persona are used.

23. Sharon Stone exercises careful consideration in selecting and approving products, services, and performances that she will permit to license or use her name, likeness, image, identity or persona. She restricts such use to products, services and performances that are of acceptably high quality to her, in her sole discretion, and for which compensation is commensurate with the exploitation and value thereof.

## Defendant Dudley

24. On information and belief, Defendant Dudley, who calls herself "Chanel West Coast," is an aspiring rap artist who has desperately sought to garner credibility and stature in the hip-hop community.

25. Challenged to achieve success as a rap artist, on information and belief, Defendant Dudley has sought to enhance her stature as a rapper by invoking and trading on the celebrity status and fame of others.

26. For example, in a recent article entitled, "Chanel West Coast Got Dragged All Over The Internet For Comparing Herself To Drake and Kanye", the author describes Defendant Dudley's penchant for glomming onto celebrity icons, stating, *"…nothing quite compares to a jaw-dropping statement from [Defendant Dudley]…compar[ing] herself to the likes of two of music's most gifted icons, Drake and Kanye West, in an attempt to boost her rap career street cred."*

**<u>Defendants' Wrongful Conduct</u>**

27. In or about June 2018, Defendants recorded a song entitled "Sharon Stoned" (the "Song") performed by Defendant Dudley using Sharon Stone's name for commercial purposes without her consent.

28. The Song gratuitously and repeatedly uses the name "Sharon Stone" in its lyrics. More than one quarter of the Song's length (a full one minute and twelve seconds of the Song) consists of nothing more than Defendant Dudley repeatedly saying the name "Sharon Stone" in mantra-like repetition.

29. During the Song, Defendant Dudley gratuitously repeats the name "Sharon Stone" thirty-three times and the name "Sharon" ninety-nine times.

30. Defendant Dudley openly admits to using Sharon Stone's famous name in the infringing Song, stating: *"Obviously, I made a song with her name in it [laughter]"*.

31. Also, beginning on or about July 10, 2018, Defendants created an infringing promotional music video as a commercial to promote the Song (the "Video").

32. As with the infringing Song, Defendants' intention from the outset was to create a Video that would trade on the fame and publicity rights of Sharon Stone for Defendants' commercial gain.

33. The Video uses Sharon Stone's name in its title written as "Sharon Stoned".

34. The Video's static opening credits displays Sharon Stone's name in

**COMPLAINT**

movie marquee style so that Ms. Stone's name is most prominent and immediately identifiable.

35. The Video incorporates the infringing Song in its entirety, with Defendant repeating Sharon Stone's name dozens of times throughout.

36. The Video is also purposefully designed and shot to evoke Sharon Stone's name, likeness, image, identity, and persona associated with her iconic movie roles.

37. Defendant Dudley openly expressed Defendants' infringing purpose to use Sharon Stone's likeness, image, identity, and persona in the infringing Video without permission or consent, stating, "*We've got to redo some classic, iconic Sharon Stone movie scenes, you know?*"

38. Defendants focused their unlawful exploitation of Sharon Stone's fame on her award-winning performances in Basic Instinct and Casino. Thus, Defendant Dudley stated, "*We've got to do a scene redoing Basic Instinct or a scene redoing something from Casino in this video*" and "*I'm dressing up like Sharon Stone.*"

39. True to Defendant Dudley's statement, among other things, Defendants wrongfully exploited Sharon Stone's rights associated with her performance in the *Basic Instinct* Interrogation Scene. The infringing Video incorporates the physical appearance, attributes, traits, looks, mannerisms, qualities, characteristics, clothing, treatment and imagery associated with Sharon Stone's likeness, image, identity, and persona in the Basic Instinct Interrogation Scene.

40. On information and belief, Defendants published the Song and the Video on April 19, 2019.

41. Following their publication, Defendant Dudley also participated in the commercial promotion of the infringing Song and Video via online media interviews.

42. Defendants used Sharon Stone's name as a celebrity endorser to promote the Song and the Video without her permission or consent.

43. In reporting about Defendants' promotion of the Song, the online media

**COMPLAINT**

reported that, "*[Defendant Dudley] has been promoting her newest song [Sharon Stoned] all over Instagram lately and her newest post shows her impersonating Sharon Stone herself from a very famous Basic Instinct [interrogation] scene*".

44. Defendants also used Sharon Stone's name as a celebrity endorser to promote the sale of cannabis paraphernalia without her permission or consent.

45. The acts by Defendants invoking Sharon Stone's name, likeness, image, identity, and persona in the infringing Song, Video, promotional interviews and product endorsements are for commercial purposes and as an advertisement for the Song, Video and related products, for the economic benefit of Defendants.

46. Upon publication, Defendants' Song and Video immediately received attention and interest from the media and the consuming public as a direct and proximate result of Defendants' unlawful use of Sharon Stone's name, likeness, image, identity, and persona without her consent.

47. The Video and Song are likely to cause confusion, and have caused confusion, in the minds of the consuming public as to an association of Sharon Stone with Defendants' Song, Video, and related commercial promotions and products.

48. The Song, Video, and related commercial promotions continue to be broadcast, shown, and publicly displayed on Defendant Dudley's Instagram, Facebook and YouTube accounts and website. The Song also continues to be sold on iTunes, Amazon Music and elsewhere.

49. Sharon Stone did not authorize or give permission or consent to Defendants, or any of them, to use Sharon Stone's name, likeness, image, identity, or persona in connection with the Song, Video, commercial endorsements, products, or otherwise.

50. The Video, Song, and related endorsements and products falsely represent that Sharon Stone sponsors, endorses, or is associated with Defendants.

51. The use of Sharon Stone's name, likeness, image, identity, and persona by Defendants was, and is, in conscious disregard of Sharon Stone's right of privacy

and publicity, and of her exclusive right to control the use and exploitation of her name, likeness, image, identity, and persona.

52. The misappropriation and use of Sharon Stone's name, likeness, image, identity, and persona by Defendants was intentional and without her consent.

53. Defendants' misappropriation was purposefully designed and intended to confuse, to cause mistake, and to deceive the public into believing that Sharon Stone sponsored, endorsed, or was associated with Defendants' products, performances, and commercial activity.

54. Defendants have created a likelihood of confusion in the minds of the consuming public as to the source, sponsorship, endorsement, or association of Sharon Stone with Defendants, and with their products, performances, and commercial activity.

55. Defendants have profited, and will continue to profit, from their unlawful and intentional misappropriation and use of Sharon Stone's name, image, identity, likeness, and persona.

## FIRST CLAIM FOR RELIEF

## (Violation of the Lanham Act 15 USC § 1125(a); Unfair Competition)

56. Sharon Stone incorporates by reference the allegations of paragraphs 1 through 55 as though fully set forth herein.

57. In doing the wrongful acts set forth herein, Defendants have engaged in commercial activity that is likely to cause confusion and/or to mislead consumers into believing that Sharon Stone has endorsed, sponsored, or otherwise approved of Defendants' products and/or services, including the Song, Video, and commercial promotions thereof.

58. In doing the wrongful acts set forth herein, Defendants have created a false association between Sharon Stone and the Defendants and their products, services and promotions, and a false designation of origin thereof.

59. Defendants' wrongful acts as set forth herein have misled and confused

consumers, and continue to mislead and confuse consumers, by, *inter alia*, willfully and intentionally creating a false impression that Defendants' products, services and/or entities are, or were, sponsored, endorsed, approved, or affiliated or associated with, Sharon Stone.

60. Defendants' wrongful acts as set forth herein has damaged, and continues to damage, Sharon Stone's exclusive rights in her name, likeness, image, identity and persona, by, *inter alia,* exploiting those rights without Sharon Stone's permission or consent.

61. Defendants have injured, and continue to injure, Sharon Stone by attempting to draw an association between Sharon Stone and the Song, Video, commercial promotions and products, despite that Sharon Stone chose not to associate herself with the them, and affirmatively has no interest in being associated with them.

62. Defendants have also injured Sharon Stone by commercially exploiting her name, likeness, image, identity and persona without her retaining control thereof, and without her receiving income commensurate with her sole and exclusive rights therein and owing to her as the sole owner of endorsement and exploitation rights thereto.

63. Defendants' conduct constitutes a willful violation of 15 U.S.C. § 1125(a).

64. Defendants' acts have damaged, and will irreparably damage, Sharon Stone.

65. Sharon Stone has no adequate remedy at law for certain of the above described wrongful acts and injuries, which include harm to her goodwill and to her right to exclusively control her name, likeness, image, identity and persona, which money damages cannot fully compensate.

66. Therefore, Sharon Stone is entitled to preliminary and permanent injunctive relief under 15 U.S.C. § 1116, to restrain and enjoin Defendants, and all persons acting in concert or association with Defendants or on their behalf, from using

Sharon Stone's name, likeness, image, identity, and persona to promote Defendants' products. Sharon Stone also asserts a claim against Defendants for damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1125, 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### (Violation of the California Common Law Right of Publicity)

67. Sharon Stone incorporates by reference the allegations of paragraphs 1 through 66 as though fully set forth herein.

68. In engaging in the acts alleged herein, Defendants have used for commercial purposes Sharon Stone's name, likeness, image, identity, and persona without her permission or consent.

69. The commercial use and misappropriation of Sharon Stone's name, likeness, image, identity, and persona is a violation of the California common law right of privacy, which includes the right of publicity.

70. As a proximate result of Defendants' acts alleged herein, Sharon Stone has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Violation of the California Statutory Right of Publicity; Civil Code § 3344)

71. Sharon Stone incorporates by reference paragraphs 1 through 70 as though fully set forth herein.

72. In doing the acts alleged herein, Defendants have knowingly, willfully, and unlawfully used and misappropriated Sharon Stone's name and likeness in connection with the Video, Song, products and promotions for Defendants' commercial purposes.

73. Defendants' misappropriation of Sharon Stone's name and likeness for their own commercial purposes is a violation of California Civil Code § 3344.

74. As a result of Defendants' actions, Sharon Stone has suffered, and will continue to suffer, damages in an amount to be proven at trial.

75. Defendants engaged in the above-described wrongful acts knowingly and

willfully intending to appropriate to themselves what they knew to be Sharon Stone's valuable rights without commensurate compensation.

76. In engaging in the conduct alleged herein, Defendants acted with oppression and/or malice, and Sharon Stone is therefore entitled to an award of punitive damages according to proof.

77. Sharon Stone is entitled to recover her costs and fees per the statute referenced in this cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests entry of judgment against Defendants, and each of them, as follows:

1. A preliminary and permanent injunction requiring Defendants and their agents, servants, and employees, and all other persons with whom they are acting in concert to refrain from using Sharon Stone's name, likeness, image, identity, or persona for commercial purposes without her consent, including in connection with the Song, Video, and commercial promotions thereof;

2. Damages against Defendants in an amount to be determined at trial;

3. Disgorgement of Defendants' profits;

4. Compensatory damages, consequential damages and/or lost profits;

5. Exemplary, enhanced and punitive damages;

6. An award of attorney's fees and costs;

7. Prejudgment interest; and

8. Such other relief as the Court deems just and proper.

Respectfully submitted,

DATED: November 4, 2019   **MUNCK WILSON MANDALA, LLP**

By: */s/ Gary A. Hecker*
Gary A. Hecker, Esq.

Attorney for Plaintiff
SHARON STONE

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

Respectfully submitted,

DATED: November 4, 2019 **MUNCK WILSON MANDALA, LLP**

By: */s/ Gary A. Hecker*
　　　Gary A. Hecker, Esq.

Attorney for Plaintiff
SHARON STONE